**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**VICTOR GAVILLAN MARTINEZ,**

    **Plaintiff,**

vs.                                  **Case No. 4:17cv210-MW/CAS**

**JULIE JONES, Secretary,
FLORIDA DEPARTMENT OF
CORRECTIONS,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

On July 18, 2017, Plaintiff, proceeding pro se, filed an amended civil rights complaint alleging that Defendant violated his constitutional rights by denial of access to his criminal case files and records contained on CD or DVD discs in violation of his First, Fifth, and Fourteenth Amendments to the United States Constitution. ECF No. 7. Plaintiff alleges that his First Amendment rights are violated by Defendant's adherence to Florida Administrative Code Rules 33-210.102(6)(b)1 and 33-602.203, which prohibit him from receiving "nonpaper items" in either routine or legal mail. *Id.* at 5. Plaintiff further contends that neither the State Attorney nor the Public Defender's Office could provide him with his criminal case file and relevant records in paper form so that he could pursue postconviction relief

because the information is only on CD or DVD, which the Defendant, pursuant to rules, prohibits him from possessing while in prison. *Id.* at 4. As relief, Plaintiff seeks, *inter alia*, a declaration that his constitutional rights have been violated, injunctive relief requiring Defendant to develop policies which allow for receipt and storage of legal records on CD and DVD, with adequate provision for review of those records, and damages. *Id.* at 9.

On October 24, 2017, Defendant filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint, citing several grounds. ECF No. 12. Plaintiff timely filed a response to the motion on May 30, 2018. ECF No. 23.

## Standard of Review

In reviewing a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted, the court must consider whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561, 569 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 (1957), that dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of his claims which would entitle him to relief). The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the

defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 550 U.S. at 555.

Courts should take a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The first consideration is whether the complaint presents "well-pleaded factual allegations" which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth." Id. If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief." Id. If so, a motion to dismiss should be denied. Id. at 680 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A

court must accept the factual allegations of the complaint as true, <u>Shotz v. American Airlines, Inc.</u>, 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." <u>Twombly</u>, 550 U.S. at 556 (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)). *"Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005) (quoted in <u>Twombly</u>, 550 U.S. at 557).

## <u>Motion to Dismiss</u>

### I. Damages

Defendant first asserts that the portion of the amended complaint that seeks damages should be dismissed based on the Defendant's entitlement to immunity under the Eleventh Amendment because Defendant Jones was sued in her official capacity. ECF No. 12 at 4. Plaintiff seeks an award of monetary damages as part of the overall relief sought. ECF No. 7 at 9. The amended complaint expressly alleges that Julie Jones is the Secretary

of the Department of Corrections (the "Department") and is "sued in her official capacity only." ECF No. 7 at 2.

Eleventh Amendment immunity protects a state official sued in his or her official capacity from suits for monetary damages. "It is well established that the [E]leventh [A]mendment immunizes an unconsenting state from suits brought in federal court by its citizens and citizens of other states." Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (quoting Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)). Even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. Zatler, 802 F.2d at 663. *See also* Williams v. Bennett, 689 F.2d 1370, 1376-77 (11th Cir.1982) (the Eleventh Amendment barred prisoner's section 1983 damage claims brought in federal court against prison officials in their official capacities), cert. denied, 464 U.S. 932 (1983); Mathews v. Jones, No. 4:14cv289-WS/CAS, 2016 WL 4942071, at *4 (N.D. Fla. Aug. 8, 2016), report and recommendation adopted, No. 4:14cv289-WS/CAS, 2016 WL 4923516 (N.D. Fla. Sept. 14, 2016). Thus, Eleventh Amendment immunity precludes Plaintiff's request for monetary damages against Defendant Jones in her official capacity, and that request for relief should be dismissed.

## II. Wrong Party

Defendant next moves to dismiss the amended complaint, contending that Plaintiff fails to state a cause of action because he is suing the wrong party, and because the restriction of Plaintiff's access to the CD is based on indisputable security concerns.  ECF No. 12 at 5-7.  Defendant contends that the suit should have been against the Office of the Public Defender to which the request for documents was made and which responded to Plaintiff that the documents would be provided to him only in the form of a CD, cautioning that it was unlikely Plaintiff could possess the CD as it is viewed as a potential weapon.  *Id.* at 5.  Defendant also contends that the Public Defender advised Plaintiff that he could complete an enclosed form titled "Authorization to Receive Attorney/Client Materials in Digital Format" and submit it to the facility asking that the facility accept the CD.  Alternatively, he was advised he could arrange for a family member to accept the CD and make copies of the document for him.  *Id.* at 5-6; *see* Exhibit A to amended Complaint ECF No. 7 at 12.

The amended complaint and attached documents do not allege that the Office of the Public Defender refused to provide Plaintiff with his records.  Rather, Plaintiff alleges that the records could be supplied only in the form of a CD.  The amended complaint and attached documents

indicate the Public Defender advised Plaintiff that he could either attempt to have the facility allow the CD or he could have the CD provided to a third party to make paper copies for him.  The amended complaint does not allege any facts that suggest the Public Defender denied Plaintiff's records request.

Defendant supports the argument that Plaintiff sued the wrong party, and should have sued the Public Defender, by arguing that the Defendant's policy of denying access to CDs is based on legitimate security concerns, citing Turner v. Safley, 482 U.S. 78 (1987).  Defendant's assertion of "undisputable security concerns" and citation to Turner is not enough.  The Turner test examines: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remains open to inmates; (3) the impact the accommodation of the asserted right will have on resources and other inmates and (4) whether a ready alternative exists that fully accommodates prisoners' rights at de minimis cost to valid penological interests; and, where accommodation of an asserted right would have a significant "ripple effect" on fellow inmates or prison staff, courts should be particularly deferential to the informed discretion of corrections officials.  Loor v. Bailey, 708 F. App'x 992, 993-94

(11th Cir. 2017) (unpublished) (citing Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996)).  Thus, under Turner, a four-factor analysis is used "to determine if a prison regulation limiting the First Amendment is reasonably related to a legitimate penological interest."  Perry v. Sec'y, Florida Dep't of Corr., 664 F.3d 1359, 1365 (11th Cir. 2011).

Although the Turner test applies to determine if a regulation is valid and legitimate, it does not limit a prisoner's right bring an action against the institution to make that determination.  To the contrary, an inmate may file a complaint regarding the substance, interpretation, and application of rules and procedures of the Department that affect them personally, and may file a complaint pertaining to the interpretation and application of state and federal laws and regulations that affect them personally.  *See* Inmate Grievances-General Policy, § 33-103.001(4)(a)-(b), Florida Administrative Code.  This ground for dismissal is without merit and should be denied.

### III. Failure to Exhaust Administrative Remedies

Defendant next contends that the amended complaint should be dismissed because Plaintiff did not file a Petition to Initiate Rulemaking as permitted by section 120.54(7)(a) of the Florida Administrative Procedures Act (APA).  ECF No. 12 at 7-20.  The Florida Department of Corrections,

however, has not included a Petition to Initiate Rulemaking in its prison grievance process.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193 (1969) (quoted in Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Where failure to exhaust administrative remedies is asserted as the basis for a motion to dismiss, the Prison Litigation Reform Act (PLRA) requires prisoners to exhaust "such administrative remedies as are available" prior to filing a § 1983 action. 42 U.S.C. § 1997e(a). The Supreme Court has clarified that exhaustion means "proper exhaustion." Woodford, 548 U.S. at 95 (cited in Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

Administrative law creates an incentive for parties who do not want to exhaust, that is, do not want to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To determine "proper exhaustion" in prisoner civil rights actions, courts look to the requirements of the "prison grievance system." Woodford, 548 U.S. at 95 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). Thus, a prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007).[1] "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Id.*

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204-09. A prisoner must comply with the process set forth and established by the grievance procedures. Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion," which means complying with the specific prison grievance requirements, not judicially imposed

---

[1] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-19 (2007) (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Case No. 4:17cv210-MW/CAS

requirements. Woodford, 548 U.S. at 93. Courts do not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998)).

 An Inmate Orientation Handbook is given to all inmates upon entering the custody of the Florida Department of Corrections to help them "understand the general rules, procedures, requirements and routines" of prison life. The Handbook states:

> The Department has a grievance process available for you to resolve issues you may have. You are encouraged to make every effort to resolve your issue prior to filing a grievance. There are two types of grievances, informal and formal. Grievance types and procedures will be explained to you during orientation and can be found in Rule 33-103, Florida Administrative Code.

Form N11-091, Inmate Orientation Handbook (Revised 12/2/16).[2] Pursuant to the Department's rules and procedures governing inmate grievances, inmates may file complaints regarding "[t]he substance, interpretation, and application of rules and procedures of the department that affect them personally." Fla. Admin. Code R. 33-103.001(4)(a). Thus,

---

[2] The Inmate Orientation Handbook is available on the Department of Corrections' website at www.dc.state.fl.us/pub/files/Inmate Orientation Handbook.pdf (last visited June 12, 2018).

Case No. 4:17cv210-MW/CAS

the Department has provided an avenue for inmates to challenge or otherwise complain about departmental rules and Chapter 33-103 outlines that process.

Chapter 33-103 requires an inmate to file an informal grievance, formal grievance, and then an appeal to the Office of the Secretary. Fla. Admin. Code R. 33-103.007(1). In limited circumstances not relevant here, an inmate may also file a "direct" grievance to the Secretary. Fla. Admin. Code R. 103.1007(6). The Department's procedures specify the manner in which grievances must be filed, and provide time limits for doing so. *See* Fla. Admin. Code R. 33-103.011. The Department's procedures concerning the three grievance steps suggest that after completing these steps, nothing further is required before initiating a lawsuit. *See* Fla. Admin. Code R. 33-103.011(4) (noting that expiration of time limits "at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."). Defendant appears to recognize as much in quoting <u>Lyons v. Trinity Servs. Grp., Inc.</u>, 401 F. Supp. 2d 1290, 1295 (S.D. Fla. 2005) (stating that a prisoner's "administrative remedies are not exhausted until his grievance has finally been appealed to, and denied by, the Secretary of the Florida Department of Corrections."). ECF No. 12 at 9. The rule also provides that if an inmate "does not agree to an extension of

time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." Fla. Admin. Code R. 33-103.011(4). That provision, again, suggests that an inmate has exhausted administrative remedies by completing the Department's three-step grievance process.

The Department's rules do not include a specific requirement that an inmate must take additional steps to exhaust a grievance concerning a challenge to an Administrative Rule. Any such implied requirement is "so opaque that it becomes, practically speaking, incapable of use." Ross v Blake, 136 S. Ct. 1850, 1859 (2016) (finding that an administrative remedy is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008)). Filing a Petition to Initiate Rulemaking is not a step that the Department holds out to inmates as a requirement in the grievance process.

As set forth in Chapter 33–103 of the Florida Administrative Code, FDC's prison grievance procedure consists of three steps. An inmate must first file "[a]n informal grievance to the designated staff." Fla. Admin. Code § 33-103.005(1)(a). The second step requires the inmate to file a formal

grievance with the warden.  *Id.* § 33-103.006(1)(a).  If the inmate is unsuccessful at this point, he or she may appeal to the Office of the Secretary. *Id.* § 33–103.007(1).  There is no mention of a Petition to Initiate Rulemaking in Chapter 33-103 (entitled "Inmate Grievances").  There is also nothing in the Inmate Orientation Handbook to suggest that FDC's inmate grievance process encompasses a Petition to Initiate Rulemaking.  Rather, the Handbook advises inmates that FDC's grievance process "can be found in Rule 33-103, Florida Administrative Code."

This Court has rejected the same failure to exhaust allegation, seeking to dismiss a complaint for failure to file a petition to initiate rulemaking, in <u>Torres v. Fla., Dep't of Corr.</u>, 4:15cv464-RH/CAS, 2017 WL 4031462 (Fla. N.D. Sept. 11, 2017), appeal pending No. 17-14359 (11th Cir.).  This Court in <u>Torres</u> stated:

> Under the Prison Litigation Reform Act, a prisoner must exhaust available administrative remedies before bringing a lawsuit of this kind.  *See* 42 U.S.C. § 1997e(a).  But as correctly noted in the report and recommendation, Mr. Torres exhausted his remedies under the Department of Corrections' grievance process.  The Department had a full and fair opportunity under that process—the process the Department adopted for this purpose—to consider the propriety of Mr. Torres's discipline.  The letter and spirit of the exhaustion statute were satisfied.
>
> A separate APA rule challenge would have been heard not by the Department of Corrections but by an administrative law judge from the Department of Administrative Hearings, *see* Fla. Stat. § 120.56, and thus would not have furthered the purposes

>of the Prison Litigation Reform Act's exhaustion requirement. A Florida administrative law judge is well versed in rulemaking procedures but lacks discretion to manage the prisons or to address constitutional issues of the kind raised by Mr. Torres. *See, e.g.*, Dep't of Envtl. Regulation v. Leon Cty., 344 So. 2d 297, 298 (Fla. 1st DCA 1977) (reaffirming that "a hearing officer does not have power to adjudicate the constitutionality of a rule" and noting that "once a statute or rule has been enacted or adopted . . . the determination of the constitutionality or unconstitutionality thereof requires exercise of judicial power which is vested only in the courts"); State, Dep't of Admin., Div. of Pers. v. State, Dep't of Admin., Div. of Admin. Hearings, 326 So. 2d 187, 189 (Fla. 1st DCA 1976) (holding that an administrative law judge could not declare an existing rule unconstitutional under the Fourteenth Amendment).
>
>Mr. Torres was not obligated to file a separate APA rule challenge.

Torres, 2017 WL 4031462, at *1-2.

In the present case, the Plaintiff alleges in his amended complaint that he exhausted his administrative remedies set forth in Chapter 33-103 of the Florida Administrative Code by filing the required grievances and appealing denial to the Secretary of the Florida Department of Corrections. *See* ECF No. 7 at 4-6. Attached to his amended complaint are copies of grievances pertaining to the subject matter of his amended complaint. *See* ECF No. 7 at 23-24 (Exhibit D); 27-29 (Exhibit F); 30-31 (Exhibit G); 32-34 (Exhibit H); 35 (Exhibit I). As in Torres, Plaintiff was not required to file a separate APA rule challenge or petition to initiate rulemaking in order to exhaust his administrative remedies prior to filing this action.

Case No. 4:17cv210-MW/CAS

Defendant also cites Smith v. Conner, No. 8:12-cv-52, 2014 WL 299099 (M.D. Fla. Jan. 28, 2014), aff'd sub nom. Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027 (11th Cir. 2015) (unpublished).  ECF No. 12 at 13.  Smith was a case in which the Middle District of Florida agreed, in part, that the inmate was "attempting to alter a Department rule . . . and therefore was required to initiate rulemaking under 120.54(7)."  Smith, 2014 WL 299099, at *4, n.6.  Judge Moody agreed with the Department's argument that because the prisoner was seeking to amend a rule regulating inmate property, "he was required to not only exhaust the prison grievance procedure, but also file a petition to initiate rulemaking under 120.54(7)."  Id.  Although the case was affirmed on appeal, the issue of exhaustion was not addressed in the decision of the Eleventh Circuit Court of Appeals, which affirmed several other unrelated issues.[3]  Moreover, as noted above, this Court has previously disagreed with that conclusion in Torres.

---

[3] Smith challenged "the denial of his motions for a preliminary injunction, for class certification and appointment of counsel for the class action, and for sanctions; the partial denial of his motion to recover the costs related to service of process; and the award of costs to the officials."  Smith, 597 F. App'x at 1029.  The issue of exhaustion was not reviewed on appeal.

Case No. 4:17cv210-MW/CAS

For the reasons stated above, the Defendant's argument as to exhaustion should again be rejected and the motion to dismiss should be denied.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 12, filed by Defendant Julie L. Jones be **GRANTED** in part and **DENIED** in part.  Defendant's motion to dismiss Plaintiff's request for monetary damages should **GRANTED**, but the motion to dismiss should otherwise be **DENIED**.  It is further **RECOMMENDED** that Defendant be required to file an answer to the amended complaint within ten (10) days of the date an Order is entered adopting this Report and Recommendation, and that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on June 12, 2018.

        <u>s/  Charles A. Stampelos</u>
        **CHARLES A. STAMPELOS**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.** Fed. R. Civ. P. 72(b)(2)**.  A copy of the objections shall be served upon**

**all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** Fed. R. Civ. P. 72(b)(2)**.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**