UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

VICTOR GAVILLAN MARTINEZ,

      Plaintiff,

v.                                                     Case No.  4:17-cv-210-MW/MJF

MARK S. INCH,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

In this action, Plaintiff alleges that Defendant's policy that prohibits inmates from possessing compact discs denies him access to the courts to pursue claims of ineffective assistance of counsel. The parties have moved for summary judgment. (Docs. 69, 72). For the reasons set forth below, the undersigned recommends that the District Court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.[1]

### I.  Procedural History

On July 17, 2017, Plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that a Florida Department of Corrections ("FDC") policy

_____

[1] The case was referred to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

that prohibits inmates from possessing compact discs ("CDs") violates Plaintiff's right to access the courts. (Doc. 7). On September 5, 2018, the District Court granted in part Defendant's motion to dismiss insofar as it precluded Plaintiff from recovering monetary damages. (Doc. 35). Thus, this action involves only Plaintiff's requests for declaratory and injunctive relief. Specifically, Plaintiff asks the District Court to declare unconstitutional the FDC regulation that prohibits FDC inmates from possessing and receiving CDs to the extent it purportedly violates Plaintiff's right of access to the courts. (Doc. 7 at 9). Plaintiff also asks the District Court to compel Defendant to develop policies which would allow FDC inmates to receive, store, and access CDs and DVDs that contain legal materials. (*Id.*).

## II.   Factual Background

### A.   <u>Plaintiff's Conviction for Second-Degree Murder</u>

In fall 2012, Plaintiff was in a relationship with Erica Roach. Plaintiff and Roach rented a trailer in or near Jacksonville, Florida. Roach allegedly allowed acquaintances to consume drugs in the trailer. (Doc. 69-2 at 13-14). Around November 4, 2012, Plaintiff argued with Jerome Day Hutz-Faulk about money and drugs that Roach had purchased. (*Id.* at 14). Plaintiff claims that Faulk threatened him with a knife. (*Id.* at 15). In response, Plaintiff grabbed a "piece of wrench" and struck Faulk "in the head several times," causing blunt force trauma and thereby

killing Faulk. (*Id.*). Plaintiff then removed Faulk's body from the trailer to prevent the police from discovering it. (*Id.* at 16).

The state prosecuted Plaintiff for murder and tampering with evidence in Duval County Circuit Court Case No. 2012-CF-011419. The Office of the Public Defender for Duval County ("Public Defender") represented Plaintiff. On August 26, 2013, Plaintiff pleaded guilty to: (1) murder in the second degree; and (2) tampering with evidence. (Doc. 7 at 41; Doc. 69-2 at 16). A transcript of his plea hearing is available online, (Doc. 18-2), in *Gavillan-Martinez v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-01031-MMH-MCR (M.D. Fla. Aug. 23, 2018), which is Plaintiff's federal habeas challenge to his criminal judgment.[2]

During the plea hearing, Plaintiff took an oath to speak truthfully. (MDFL Doc. 18-2 at 54). While under oath, Plaintiff agreed that he was pleading guilty because he was in fact guilty of the charged offenses. (*Id.* at 62). Plaintiff stated that

---

[2] Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Plaintiff filed a Rule 3.850 proceeding in the Circuit Court in and For Duval County, Florida, which raised four claims of ineffective assistance of counsel. *See* Case No. 16-2012-CF-11419-AXXX-MA. The undersigned takes judicial notice of the existence of that action and the documents filed in that case, and those which have been filed with the United States District Court for the Middle District of Florida in *Gavillan-Martinez v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-01031-MMH-MCR (M.D. Fla. Aug. 23, 2018). Plaintiff received hard copies of all documents filed in his state and federal collateral review actions, as he was a party to the proceedings.

he had reviewed the affidavit contained in the arrest and booking report, and he agreed that there was a sufficient factual basis for his guilty plea to both counts. (*Id.*). Plaintiff also stated that he was satisfied with his attorney's representation. (*Id.*). Plaintiff agreed that his attorney informed him that DNA testing was not conducted and would not be conducted. (*Id.* at 63). Faulk's mother was present at the plea hearing, and Plaintiff apologized to her. (*Id.* at 69).

Pursuant to Plaintiff's agreement, the Florida court sentenced Plaintiff to twenty-eight years of imprisonment for the murder offense, and five years of imprisonment for the evidence tampering offense, to be served concurrently. (Doc. 7 at 41). The court informed Plaintiff that he could appeal his sentence and that the court would appoint the Public Defender if Plaintiff could not afford an attorney. (MDFL Doc. 18-2 at 65). Nevertheless, Plaintiff did not appeal his conviction or sentence.

### B.    <u>Plaintiff's Attempts to Obtain "Records"</u>

Instead of filing an appeal, Plaintiff challenged his conviction through a motion filed pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. On September 15, 2014, Plaintiff requested a copy of his attorney's case file. The Public Defender agreed to provide its records, but only electronically on a CD. (Doc. 69-2 at 21). In a letter to Plaintiff, the Public Defender stated:

> Please be advised that as of August 1, 2011 our office has converted our case files to a paperless electronic system. This means

that all of the records that our office produced, received and retained in the course of your defense are now stored electronically and we do not have paper copies. Therefore any requests for copies of your file will be made in this new electronic format.

Although not required by law, our office will provide you with **ONE** digital copy (*a CD*) at no cost to you, of all the documents/materials that you would be eligible to receive. Prior to sending this CD to you, you must have a representative from your correctional facility sign the enclosed "Authorization to Receive Attorney/Client Materials in Digital Format" form since most correctional facilities will not allow inmates to receive this type of media form, due to it being viewed as a potential weapon. If you cannot arrange for your facility to accept this CD in your name you can elect for it to be sent to a family member or friend who then can make you paper copies.

(Doc. 7 at 12; Doc. 69-2 at 21).

In an effort to have the Public Defender mail his CD to Plaintiff, Plaintiff submitted the "Authorization to Receive Attorney/Client Materials in Digital Format" form to his classification officer. (Doc. 69-2 at 19). According to Plaintiff, the classification officer never responded.[3] (*Id.* at 20-21). Plaintiff filed various grievances about this issue. (*Id.* at 21-22). The parties agree that Plaintiff never received access to a CD while he was incarcerated, and Plaintiff does not know whether the Public Defender ever attempted to mail a CD to him. (*Id.* at 19).

---

[3] Plaintiff does not specify the FDC institution in which he resided when he submitted the form to his classification officer.

### C.    FDC's Regulation Prohibiting Inmates from Receiving CDs

Even if the Public Defender had sent a CD to Plaintiff at his prison address, the FDC would not have allowed Plaintiff to possess or have access to a CD. An FDC regulation prohibits inmates from receiving non-paper items in legal mail, including CDs and DVDs. The regulation states in relevant part:

> (b) the following items which are prohibited from receipt in routine mail are also not permissible for inclusion in or attachment to legal mail:
>
> (1) Non-paper items.

Fla. Admin Code r. 33-210.102(6)(b).

The parties agree that, under FDC policies, CDs and DVDs are considered contraband and are not permitted to be sent to inmates, even via legal mail. Plaintiff does not dispute that CDs and DVDs are made of a plastic material known as polycarbonate. (Doc. 69-3 at ¶ 4; Doc. 93-1 at ¶ 5). Plaintiff also does not dispute that polycarbonate easily can be fashioned into weapons that cannot be identified by metal detectors. (Doc. 69-3 at ¶ 4; Doc. 93-1 at ¶ 5).

### D.    The Public Defender Sent CDs to an Attorney and Two Others

In light of the FDC regulation prohibiting access to CDs, Plaintiff authorized at least three individuals—who were not incarcerated—to receive a CD on his behalf. (Doc. 69-2 at 27-28). Specifically, Plaintiff's family retained an attorney— whom Plaintiff does not identify by name—and the attorney was supposed to obtain

a CD from the Public Defender and provide Plaintiff with the relevant documents. (*Id.* at 29-30). Plaintiff claims, however, that this attorney never provided Plaintiff with the documents. (*Id.*).

Plaintiff also authorized receipt of the CD by a family member of his "former roommate" and the spouse of another inmate. (*Id.*) Each received a CD from the Public Defender, but they were unable to access any documents because the CD was blank or could be accessed only with a password that was not provided by the Public Defender. (*Id.* at 28).

### E.   <u>Plaintiff's Attempts to Obtain Records from the State and County</u>

Additionally, Plaintiff sought records relating to his criminal case through state court proceedings and through "public records requests" submitted to the State Attorney's Office and Sherriff's Office. (Doc. 69-2 at 26-27; Doc. 87 at 46-54). These offices, however, required Plaintiff to pay fees for the requested materials. (Doc. 69-2 at 26). Plaintiff could not afford these fees, and thus was unable to obtain the records. (*Id.* at 27). Additionally, the State Attorney's Office and Sherriff's Office indicated that some of the evidence they possessed consisted of audio recordings—such as recordings of telephone calls—which could not be provided to Plaintiff because the FDC prohibited CDs and DVDs in its institutions. (Doc. 87 at 46-47, 53). The State Attorney's Office and Sherriff's Office, however, informed Plaintiff that he could designate a person to receive these items. (*Id.* at 51). Plaintiff

also sought relief from the FDC through the FDC's grievance process, but FDC officials denied Plaintiff's grievances citing the FDC's policy against CDs and security concerns associated with inmates possessing CDs. (Doc. 7).

### F.    Plaintiff's Action to Obtain Paper Copies from the Public Defender

Plaintiff also filed a petition for writ of mandamus in Duval County Circuit Court against the Public Defender seeking paper copies of the Public Defender's files. (Doc. 69-2 at 31-34). On July 20, 2018, the Duval County Circuit court issued a show cause order and directed the Public Defender to respond to Plaintiff's writ of mandamus and the court's order. (*Id.*). In its response, the Public Defender noted that it had sent CDs of its records pertaining to Plaintiff to three individuals, including Plaintiff's post-conviction relief attorney, Jose Debs Elias. One of the individuals refused delivery. On January 14, 2019, the Duval County Circuit court denied Plaintiff's Writ of Mandamus. Plaintiff appealed the decision to the District Court of Appeals. The District Court of Appeal dismissed the appeal when Plaintiff failed to file a response. *Gavillan-Martinez v. Shirk*, No. 1D19-00656 (Fla. 1st DCA Sept. 25, 2019).

### G.    Plaintiff's Post-Conviction Litigation in State Court

On April 23, 2014, Plaintiff filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 in the Circuit Court in and for Duval

County, Florida. Plaintiff filed an amended motion on September 23, 2015. Plaintiff alleged that his counsel was ineffective in four ways:

(1) she failed to file a motion to dismiss the charge of murder in the second degree pursuant to Florida's "stand your ground" law;

(2) she failed to move to suppress unspecified evidence obtained from the trailer in which Plaintiff killed Faulk, which purportedly was obtained in violation of the Fourth Amendment;

(3) she provided deficient advice insofar as she informed Plaintiff that he would serve a mandatory life sentence if he were convicted after a trial and did not plead guilty; and

(4) she failed to request a presentence investigation report. (Doc. 7 at 43-44).

On August 17, 2016, the Circuit Court held an evidentiary hearing at which Plaintiff's former counsel testified and was cross-examined by Plaintiff. Plaintiff provided to this court only portions of the transcript of this testimony. (Doc. 87 at 34-35). A full transcript of this evidentiary hearing is available online, (MDFL Doc. 18-1 at 155-230), in *Gavillan-Martinez v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-01031-MMH-MCR (M.D. Fla. Aug. 23, 2018).

At the evidentiary hearing, Plaintiff dismissed the attorney he had retained to litigate his post-conviction case, Jose Debs Elias. (MDFL Doc. 18-1 at 159). He asked for a continuance, but the request was denied. Importantly, Plaintiff never

complained that he could not proceed because he did not have the documents from the Public Defender's files.

In her testimony, Plaintiff's former attorney stated:

- she advised Plaintiff of the possibility of having a "stand your ground" hearing, but after discussing it with Plaintiff, he elected not to seek one, (*Id.* at 177-78);

- Plaintiff elected to waive his right to a presentence investigation after his attorney advised him of his right to obtain one, (*Id.* at 180-81, 205-06);

- Plaintiff never asked her to file a suppression motion and she did not perceive any meritorious "search and seizure issues," (*Id.* at 182);

- she informed Plaintiff that a knife had not been tested for DNA, informed him that the knife would not be tested if he elected to plead guilty, and Plaintiff understood this and agreed not to seek testing of the knife, (*Id.* at 200-01); and

- she discussed with Plaintiff the maximum punishment he faced, and he agreed that they would make an offer to plead guilty and receive a sentence of 28 years of imprisonment, (MDFL Doc. 18-1 at 202).

Plaintiff asked to see documents in his former attorney's file, and the court agreed to make those documents part of the record so that Plaintiff could see them. (*Id.* at 229). On cross-examination, Plaintiff also admitted that he had made a post-

trial discovery request to the State Attorney's Office and he received documents in response, including police reports. (*Id.* at 221).

The Circuit Court in and for Duval County rejected each of Plaintiff's claims in a written decision. (Doc. 7 at 41). Plaintiff appealed, but the First District Court of Appeal affirmed *per curiam* without a written opinion. *Gavillan-Martinez v. State*, 257 So. 3d 115 (Fla. 1st DCA 2018) (Table).

## H. Plaintiff's Section 2254 Action in the Middle District of Florida

On August 23, 2018, in the Middle District of Florida, Plaintiff filed an action pursuant to 28 U.S.C. § 2254. Plaintiff subsequently amended his petition twice. He alleged four grounds for relief:

(1) Trial counsel was ineffective for not moving to dismiss the prosecution based on Florida's "stand your ground" law;

(2) Trial counsel was ineffective for failing to move to suppress evidence obtained from Plaintiff's rental trailer;

(3) Trial counsel was ineffective for failing to investigate whether Plaintiff had been evicted from his rental trailer; and

(4) Trial counsel was ineffective for failing to investigate and assess defenses regarding the Plaintiff's mental state at the time of the murder and his mental state before he was sentenced.

(MDFL Doc. 17). Plaintiff has not moved the United States District Court for the Middle District of Florida for access to the Public Defender's case file and apparently was able to initiate his section 2254 action without access to that case file.

## I.    Plaintiff's Claim of Denial of Access to the Courts in this Action

As mentioned above, Plaintiff claims that he was denied access to the courts insofar as he was not permitted to receive and possess a CD from the Public Defender, and this affected his ability to raise claims of ineffective assistance of counsel. Specifically, Plaintiff alleges in his amended complaint:

> Plaintiff could have raised more viable claims of ineffective assistance of counsel for failure to investigate DNA evidence, misadvise as to DNA evidence, and failure to investigate and call witnesses for deposition and suppression motion/hearing support had he not been denied access to his case files and records.

(Doc. 7 at 7, ¶ 29).

Plaintiff, however, never identifies what documents in his "case files and records" would have allowed him to raise "more viable" claims of ineffective assistance of counsel. He also never states how these documents would have established that his trial counsel was ineffective. Plaintiff also never states why he did not raise this issue in his Rule 3.850 action, or why he did not request that the judge presiding over his evidentiary hearing order the Public Defender to provide Plaintiff with a paper copy of its files. Notably, when Plaintiff requested access to

documents referenced by his former trial counsel, the judge presiding over his hearing ordered that Plaintiff be provided copies of those documents. (MDFL Doc. 18-1 at 197-98, 229). Plaintiff also does not state why he has not sought paper copies of the Public Defender's files through his section 2254 action.

## III.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson*, 477 U.S at 249, 106 S. Ct. at 2510-11. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512. In evaluating a summary judgment motion, the "evidence of the non-movant is to be believe and all justifiable inferences" must be resolved in the nonmoving party's favor. *Id.* at 255, 106 S. Ct. at 2513; *Beard v. Banks*, 548 U.S. 521, 529, 126. S. Ct. 2572, 2578 (2006); *see Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

## IV.    Discussion

Defendant is entitled to summary judgment for three independent reasons, each of which is sufficient in itself to warrant summary judgment for Defendant. First, Plaintiff failed to allege a plausible claim of denial of access to the courts. Second, Plaintiff has failed to allege sufficient injury and has not created a genuine issue of material fact as to that element. Third, under *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987), Plaintiff has not demonstrated the existence of a genuine issue regarding the constitutionality of the Florida regulation that prohibits inmates from receiving and possessing CDs.

## A.    <u>Failure to Allege a Plausible Denial of Access to the Courts Claim</u>

Defendant is entitled to summary judgment because the record demonstrates that Plaintiff currently has access to a court—namely the United States District Court for the Middle District of Florida—to litigate his ineffective assistance claims.

In order to establish a violation of the right of access to the courts, a prisoner first must establish that he suffered an actual injury. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1271 (11th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 2179 (1996)); *United States v. Stringer*, 546 F. App'x 896, 897 (11th Cir. 2013) ("[T]he denial of access to legal materials does not violate the Fifth Amendment unless the deprivation impedes the prisoner from pursuing a nonfrivolous claim for relief."). Specifically, a plaintiff must show that he suffered actual harm as a result of a defendant's conduct. *Lewis*, 518 U.S. at 349, 116 S. Ct. at 2179.

The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S. Ct. 2179, 2186-87 (2002). Thus, in order to prevail on an access to court claim, Plaintiff must show that he was denied the ability to litigate his underlying claims, in this case, claims of ineffective assistance of counsel. *Lewis*, 518 U.S. at 349, 116 S. Ct. at 2179 (quoting *Wolff v. McDonnell*,

418 U.S. 539, 579, 94 S. Ct. 2963, 2986 (1974)); *see Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998).

A plaintiff who has access to a judicial forum to litigate his underlying claims cannot at the same time plausibly claim that he is being denied access to the courts. *Aldrich v. Ruano*, 554 F. App'x 28, 28 (1st Cir. 2014). When a plaintiff already is litigating claims in a court—the very claims he alleges he is precluded from raising—that court usually can address any alleged denial of access to documents, "and thus, an access to courts claim typically will not be viable." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263 (6th Cir. 1997). "If a party is aware of the basic facts undergirding his claim but fails to make his case whether through inadequate discovery or otherwise, he may not relitigate that dispute through a denial-of-access claim." *Sousa v. Marquez*, 702 F.3d 124, 129 (2d Cir. 2012). A denial of access to the courts claim is "not cognizable when the plaintiff had knowledge of the crucial facts and an opportunity to rebut opposing evidence, because such a plaintiff necessarily had adequate access to a judicial remedy." *Id.* at 128.

In this case, there is no dispute that Plaintiff currently has a section 2254 action—in which he alleges ineffective assistance of counsel—pending in the Middle District of Florida. He filed that action on August 23, 2018. According to Plaintiff's amended complaint in the present action, at least by June 2015, Defendant allegedly denied Plaintiff access to a CD containing the Public Defender's records.

(Doc. 7 at 5). Thus, by the time Plaintiff filed his section 2254 action, he knew that Defendant was not affording him access to a CD, which purportedly is denying him access to the courts. If Defendant was and is denying Plaintiff access to materials essential to litigating his section 2254 action, he could and can bring that to the attention of the District Court for the Middle District of Florida. That court has the authority to order discovery if good cause is shown. *See* Rule 6, Rules Governing Section 2254 Cases in the U.S. District Courts. That court also may order the parties to expand the record. *See* Rule 7, Rules Governing Section 2254 Cases in the U.S. District Courts. Finally, a court in which a section 2254 petition is pending also may elect to hold an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases in the U.S. District Courts. Plaintiff does not claim that these avenues of relief have been closed to him. Accordingly, Plaintiff has failed to state a plausible claim that Defendant has and continues to deny him access to the courts to the extent he seeks to raise claims of ineffective assistance of counsel.

## B.    <u>Failure to Allege and Demonstrate Injury</u>

Defendant is entitled to summary judgment for a second independent reason: Plaintiff failed to allege and demonstrate that he suffered injury. That is, he failed to allege or create a genuine issue of material fact that he could not and cannot raise claims of ineffective assistance of counsel because he was precluded from reviewing a CD from the Public Defender.

In a claim for denial of access to the courts, a plaintiff must allege and demonstrate that he suffered injury in a criminal appeal or post-conviction matter in which he was seeking "to vindicate 'basic constitutional rights.'" *Lewis*, 518 U.S. at 354, 116 S. Ct. at 2181-82 (quoting *Wolff*, 418 U.S. at 579, 94 S. Ct. at 2986); *Wilson*, 163 F.3d at 1290. An inmate plaintiff must allege and "prove that he has a colorable underlying claim for which he seeks relief." *Barbour*, 471 F.3d at 1226. "[T]he plaintiff must identify within his complaint, a nonfrivolous, arguable underlying claim." *Id.* (citation omitted). As in every complaint, the factual allegations regarding injury "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). "The allegations about the underlying cause of action must be specific enough to give fair notice to defendants and must 'be described well enough to apply the nonfrivolous test and to show that the arguable nature of the underlying claim is more than hope.'" *Cunningham*, 592 F.3d at 1271 (quoting *Christopher*, 536 U.S. at 416, 122 S. Ct. at 2187).

In addition to establishing that he had a non-frivolous underlying claim, a plaintiff must establish that a defendant substantially impeded his prosecution of this claim, such as causing the underlying action to be dismissed. *Wilson*, 163 F.3d at 1290-91; *see also Bass v. Singletary*, 143 F.3d 1442, 1445-46 (11th Cir. 1998). If a

plaintiff ultimately was able to litigate his underlying claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. *Wilson*, 163 F.3d at 1291.

In *Christopher*, the Supreme Court discussed the requirements of a viable claim for denial of access to the courts. 536 U.S. at 415, 122 S. Ct. at 2187. In that case, the plaintiff alleged that she was denied access to the courts because the federal government withheld information from her that she needed to discover and litigate a claim relating to her husband's torture and murder. *Christopher*, 536 U.S. at 405, 122 S. Ct. at 2181. In her complaint, however, plaintiff failed to state with particularly what cause of action she could have brought had the federal government given her access to the information it allegedly concealed. *Id.*

The Supreme Court set forth the prerequisite for pleading a claim of denial of access to the courts. It held that "the underlying cause of action . . . is an element that *must be described in the complaint . . . .*" *Christopher*, 536 U.S. at 415, 122 S. Ct. at 2187 (emphasis added). The Court also stated that the plaintiff must describe the claim for which he was denied access to the courts with sufficient detail to permit a district court "to apply the nonfrivolous test and to show that the 'arguable' nature of the underlying claim is more than mere hope." *Id.* at 416, 122 S. Ct. at 2187. To accomplish that, the complaint must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued . . ." in the plaintiff's federal action. *Id.* at 417, 122 S. Ct. at 2188.

Page 19 of 41

Here, the underlying claim for which Plaintiff claims he was denied access to the courts is ineffective assistance of counsel. To prevail on such a claim, a litigant must allege and establish that his "'counsel's representation fell below an objective standard of reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 2473 (1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)); *Kahn v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019). In the context of a guilty plea, a plaintiff must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Plaintiff's amended complaint, he devotes one sentence to the underlying ineffective-assistance claims which the Defendant allegedly denied him the ability to raise in a court:

> Plaintiff could have raised more viable claims of ineffective assistance of counsel for failure to investigate DNA evidence, misadvise as to DNA evidence, and failure to investigate and call witnesses for deposition and suppression motion/hearing support had he not been denied access to his case files and records.

(Doc. 7 at 7, ¶ 29).

That one sentence clearly does not meet the pleading standard set forth by the Supreme Court in *Christopher*. Plaintiff's single sentence fails to state his underlying ineffective assistance claims with the specificity required by Rule 8(a) as though those claims were being independently pursued in this action. The one sentence Plaintiff devotes to his underlying claim does not afford this court the ability to determine whether Plaintiff's ineffective assistance claim is frivolous or viable. Indeed, the exact nature of his attorney's alleged ineffectiveness is unclear. For example, Plaintiff does not identify any reason why his attorney should have pursued DNA evidence and thus why her failure to do so was unreasonable. He also does not state how the failure to obtain this evidence caused him prejudice. He does not allege that this DNA evidence would have established his innocence or that he would not have pleaded guilty if his attorney had obtained this DNA evidence. Plaintiff also does not allege with sufficient specificity what evidence was on the CD to which he was denied access that would have helped him pursue this claim.

Likewise, as to his attorney's alleged failure to depose witnesses, Plaintiff does not provide the names of witnesses who should have been deposed. He also does not specify the testimony these witnesses would have provided or how their testimony would have aided his case. Again, he has not stated how his attorney acted unreasonably or the prejudice that this caused to him. He also has not alleged or shown how not having access to a CD precluded him from prevailing on this claim.

As to the suppression motion which his attorney purportedly failed to file, Plaintiff's complaint does not identify what evidence should have been suppressed, the grounds for suppression, or how that evidence was prejudicial to Plaintiff. From Plaintiff's amended complaint, this court cannot determine whether Plaintiff's claim is frivolous or has sufficient plausibility to move forward. He also does not state how denial of access to a CD affected his ability to prosecute and prevail on this claim.

In light of these glaring omissions, Plaintiff has failed to state a claim upon which relief can be granted. *See Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (holding that plaintiffs failed to state a claim—even though prison officials "confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes"—because plaintiffs "did not specify facts demonstrating that the claims were nonfrivolous"). A district court may *sua sponte* dismiss a claim of a prisoner proceeding *in forma pauperis* when Plaintiff failed to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A. For this reason, too, Plaintiff's access to courts claim should be dismissed.

Additionally, even if Plaintiff had properly pleaded a claim of ineffective assistance, summary judgment would be warranted because Plaintiff has not shown

that there is a genuine issue of material fact that, if resolved in his favor, demonstrates that his ineffective-assistance claim was viable.

To withstand summary judgment on a denial of access to the courts claim, a plaintiff must put forth evidence demonstrating that he had a viable claim for relief that was thwarted by a defendant's actions. *Christopher*, 536 U.S. at 415, 122 S. Ct. at 2187; *Lewis*, 518 U.S. at 353 & n.3, 116 S. Ct. at 2181 & n.3. A litigant asserting an access claim must "prove that he has a colorable underlying claim for which he seeks relief." *Barbour*, 471 F.3d at 1226. By failing to point to any evidence indicating that counsel's performance was deficient or caused him prejudice, Plaintiff has failed to show that his allegations of ineffective assistance amount to "more than mere hope" of obtaining relief. *Christopher*, 536 U.S. at 416, 122 S. Ct. at 2187. Merely asserting that Defendant denied Plaintiff access to a CD that might have contained evidence in support of his claims is insufficient to withstand summary judgment. At "the summary judgment stage, general factual allegations of injury will not suffice; rather, the plaintiff 'must set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken to be true.'" *Barbour*, 471 F.3d at 1225. A court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Furthermore, Plaintiff has not identified what evidence or documents the Public Defender possessed which would have demonstrated that his trial counsel was ineffective. For example, Plaintiff does not allege that the Public Defender possessed evidence that Plaintiff was actually innocent or that he was coerced into pleading guilty. Indeed, Plaintiff offers no evidence in support of his allegation that the Public Defender possessed materials that would have established his counsel's ineffectiveness. In his response to Defendant's motion for summary judgment, Plaintiff fails to identify the documents that the Public Defender possessed and which would have allowed Plaintiff to prevail on an ineffective assistance claim. Rather, he vaguely asserts that "his criminal files and court record" "are indispensable and urgently needed to diligently research the investigative work performed by the trial counsel relate [sic] to a warrantless search and suppression motion." (Doc. 87 at 8).

Essentially this is an admission that Plaintiff does not know what is contained in the Public Defender's files, but he would like to peruse them to "research the investigative work by the trial counsel" to see if his counsel acted reasonably. (*Id.*). Plaintiff, therefore, is merely speculating that his counsel was ineffective and that Public Defender files have information that he could have used in litigating his ineffective assistance claims. "Speculation does not create a genuine issue of fact;

instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005).

In addition to failing to identify what helpful evidence the Public Defender possessed, Plaintiff's only evidence regarding the contents of the CD from the Public Defender indicates that the CD would have been useless to Plaintiff, even if Defendant had allowed him to receive and possess CDs in prison. In his deposition testimony, Plaintiff testified that he authorized the Public Defender to send a CD to his attorney and two other individuals. (Doc. 69-2 at 29). According to Plaintiff, the CDs sent by the Public Defender were blank or required passwords that the Public Defender did not provide. (*Id.*). Accordingly, anybody who would have received the CD—including Plaintiff—would not have been any better off than Plaintiff was without the CD. That is, according to Plaintiff's own testimony, Defendant's refusal to allow him to have the CD caused him no prejudice insofar as the CD either contained nothing or could not be accessed by Plaintiff or his associates. To withstand summary judgment on a denial of access to the courts claim, a plaintiff "must present evidence that the defendants' actions actually rendered any available state court remedy ineffective." *Swekel*, 119 F.3d at 1264. Plaintiff has failed to set forth evidence indicating that Defendant's policy was the cause of Plaintiff not raising additional ineffective assistance of counsel claims in state court.

Plaintiff also failed to put forth any evidence that he had a viable ineffective assistance claim. For example, he has not shown that he raised in his Rule 3.850 proceeding the ineffective assistance claims he now asserts, or that the Duval County Circuit Court rejected such claims for lack of evidence that was contained in the Public Defender's files. Indeed, the record demonstrates that Plaintiff raised four claims of ineffective assistance, but he never raised the specific allegations of ineffective assistance that he now contends are viable claims. (Doc. 7 at 43-44). Plaintiff offers no explanation for his failure to raise these claims in his Rule 3.850 proceeding. Furthermore, he has not offered any evidence that his claims are viable, and the only evidence available to this court indicates that they are not.[4] Plaintiff's one-sentence allegation of ineffectiveness in his verified amended complaint is the extent of the "evidence" that he puts forth on this issue. That one sentence is insufficient.

Summary judgment also is appropriate because the undisputed evidence shows that Plaintiff had access to the courts insofar as he filed—and litigated at both the trial and appellate levels—a Rule 3.850 proceeding for ineffective assistance of

---

[4] For example, Plaintiff asserts that his counsel was ineffective for not obtaining DNA evidence. During his plea colloquy, however, Plaintiff agreed that his attorney informed him that DNA testing had not been conducted and would not be conducted. (MDFL Doc. 18-2 at 63). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). Plaintiff offers no evidence to indicate that his attorney was ineffective for failing to obtain DNA evidence.

counsel. *See Gavillan-Martinez v. State*, 257 So. 3d 115 (Fla. 1st DCA 2018) (Table). Plaintiff, therefore, has not demonstrated that he was unable to raise claims of ineffective assistance. Rather, it is undisputed that Plaintiff raised four claims of ineffectiveness in his Rule 3.850 proceeding, not to mention his section 2254 action currently pending in the Middle District of Florida. (Doc. 7 at 43-44). In his Rule 3.850 proceeding, Plaintiff was afforded an evidentiary hearing. (*Id.* at 41). Furthermore, Plaintiff's trial counsel testified at that evidentiary hearing and Plaintiff cross-examined her. (*Id.*). Plaintiff does not allege—much less offer evidence—that he was unable to obtain evidence in the Circuit Court through his Rule 3.850 proceeding or that he was precluded from cross-examining his trial counsel.[5] He also has not alleged, must less demonstrated, that he is precluded from obtaining discovery in his section 2254 action.

As a matter of logic, when the record shows that a plaintiff has litigated—and continues to litigate—ineffective assistance claims, he cannot establish that he was unable to litigate such claims. *See Swekel*, 119 F.3d at 1263 (noting that when a plaintiff litigated in a court and was free to raise a claim in that court, an "access to courts claim typically will not be viable"). In the Florida Circuit Court in which he

---

[5] Florida trial courts may allow limited prehearing discovery into matters that are relevant and material to post-conviction proceedings. *See Muhammad v. State*, 132 So. 3d 176, 204 (Fla. 2013) (citing *State v. Lewis*, 656 So. 2d 1248, 1249-51 (Fla. 1994)).

brought his ineffective assistance claims, Plaintiff was afforded an opportunity to litigate claims of ineffective assistance. In this proceeding, he could have raised all of his claims of ineffective assistance even if he lacked the evidence to prevail on those claims because he was denied access to a CD. Plaintiff then could have pursued discovery through the Florida Circuit Court. When a plaintiff was able to litigate a claim effectively, he cannot demonstrate that he was unconstitutionally denied access to the courts. *Wilson*, 163 F.3d at 1291. Summary judgment, therefore, is also warranted for this reason. *See Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1190 (11th Cir. 2004) ("It is beyond question that a district court may grant summary judgment where the material facts concerning a claim cannot reasonably be disputed.").

## C.   The Regulation at Issue is Permissible Under *Turner v. Safley*

Finally, summary judgment also would be proper in this case insofar as the regulation about which Plaintiff complains passes constitutional muster under *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987).

In *Turner*, the Supreme Court established a test to determine whether a prison regulation or policy that restricts an inmate's constitutional rights is itself constitutional. A prison regulation is constitutional if it is reasonably related to legitimate penological interests. *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (citing *Turner*, 482 U.S. at 89, 107 S. Ct. at 2259). The Supreme Court

identified four factors that are relevant to the reasonableness inquiry: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which the accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns. *Turner*, 482 U.S. at 89-91, 107 S. Ct. at 2261-63; *Pope*, 101 F.3d at 1384. A plaintiff bears the burden of establishing the unconstitutionality of a prison regulation. *See Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) ("The distribution of burdens between the parties also reflects the difficulties of prison management from the bench: the burden 'is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.'") (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132, 124 S. Ct. 2162, 2168 (2003)).

### 1.    *The First Turner Factor: A Rational Connection*

Under the first *Turner* factor, a court must consider whether there is a genuine issue of material fact regarding a rational connection between the regulation at issue and the asserted government interest. *Turner*, 482 U.S. at 89-90, 107 S. Ct. at 2262. In determining whether a "rational connection" exists, the logical connection between the regulation and the asserted goal must not be so remote as to render the

policy "arbitrary or irrational." *Id.* Ultimately in making this assessment, one "question is whether the prison officials are rational in their belief that, if unchecked [the banned item] could . . . undermine prison security in the future." *Singer v. Raemisch*, 593 F.3d 529, 536 (7th Cir. 2010).

Defendant asserts that the purpose of its restriction on prisoners possessing CDs is to prevent inmates from creating weapons, which is in furtherance of the government's interest in ensuring the safety of inmates, prison staff, and visitors. (Doc. 69 at 15). Maintaining safety and internal security of prison facilities is a legitimate objective and is "perhaps the most legitimate of penological goals." *Overton*, 539 U.S. at 133, 123 S. Ct. at 2168; *Thornburgh v. Abbott*, 490 U.S 401, 415, 109 S. Ct. 1874, 1882 (1989) (holding that a regulation promulgated with the purpose of "protecting prison security" is legitimate since that "purpose . . . is central to all other corrections goals"); *Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1366 (11th Cir. 2011) (acknowledging that "protecting the public and ensuring internal prison security" are legitimate penological interests). Plaintiff does not dispute that this is a legitimate governmental objective.

As to the rational connection between the regulation and the governmental interest, Defendant submitted the sworn declaration of Michael Hugh Harrell, Bureau Chief of Security Operations for the Florida Department of Corrections. (Doc. 69-3). In his declaration, Harrell states: "Compact disks (CDs) and digital

video disks (DVDs) pose a security risk" because they can be "fashioned into a homemade" stabbing or cutting-type weapon. (*Id.* at ¶ 4). Harrel also states that CDs "are made primarily of polycarbonate," which cannot be detected by metal detectors. (*Id.*). Thus, discovery of homemade weapons made from CDs or DVDs would be "very difficult" and pose a threat to institutional security. (*Id.*). When a warden authorizes CDs or DVDs to be introduced into an institution, the CDs and DVDs are "tightly controlled by staff" and under "constant correctional supervision." (*Id.*; Doc. 93-1 at ¶ 6). Additionally, when the CDs and DVDs are not in use they are "kept in a secure location," which is an area not accessible to inmates. (Doc. 69-3 at ¶ 4; Doc. 93-1 at ¶ 6).

In his deposition testimony, Plaintiff conceded that a CD or DVD may reasonably be used as a weapon and pose a security risk inside prison facilities. (Doc. 69-2 at 36-37). Despite this admission, Plaintiff contends that Defendant has not shown that CDs present a serious security risk because (1) Defendant has not submitted evidence that a CD or DVD has ever been used as a weapon; and (2) Defendant allows CDs and DVDs to be used for recreational and religious programs inside the prisons. Thus, Plaintiff asserts that the Defendant's assertion that a CD or DVD can be fashioned into a weapon "has no bases or foundation on experience or statistic." (Doc. 87 at 12).

The Eleventh Circuit has rejected Plaintiff's contention that a defendant must produce evidence demonstrating that the harm the government seeks to prevent occurred in the past. Prison officials are not "required to adduce specific evidence of a causal link between" a prison regulation and "actual incidents of violence (or some other threat to security)." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 968 (11th Cir. 2018) (quoting *Lawson v. Singletary*, 85 F.3d 502, 513 n.15 (11th Cir. 1996)). The government properly "may seek to prevent harm that has yet to occur." *Simpson v. Cty. of Cape Girardeau*, 879 F.3d 273, 280 (8th Cir. 2018); *Murchison v. Rogers*, 779 F.3d 882, 890 (8th Cir. 2015) (stating that *Turner* "does not require actual proof that a legitimate interest will be furthered by the challenged policy" and that "evidence short of an actual incident satisfies" the first factor) (quotation marks omitted); *Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 882 (9th Cir. 2002) (noting that "prison officials may pass regulations in anticipation of security problems" that have not yet occurred). The fact that the Defendant has not submitted evidence of actual incidents of violence relating to CDs does not create a genuine dispute as to any material fact. Indeed, in light of the regulation precluding inmate access to and possession of CDs, such evidence likely would be impossible to obtain.

The fact that Florida prison inmates already view materials contained on CDs or DVDs—but do not possess or have access to the CDs and DVDs—also does not

create a genuine issue of material fact. Defendant concedes that CDs and DVDs are brought into Florida prisons for religious, recreational, and educational purposes, but there also is no dispute that "inmates themselves are not allowed to possess" CDs and DVDs and that these CDs and DVDs may be brought into prisons only when a warden authorizes it and only under strict staff control. (Doc. 78 at 3; *see also* Docs. 69-3, 69-4 at 2 ¶¶ 1, 7, 7A Def. Ex. D).[6] Such CDs and DVDs also are stored in a secure location when not in use, not in a location where prisoners can gain access to them. (Doc. 93-1 at ¶ 6). Thus, there is no genuine dispute that the regulation at issue is rationally related to a legitimate penological objective.

### 2.   *The Second Turner Factor: Alternative Means*

Under the second *Turner* factor, a court must ask whether there are alternative means available to plaintiff to access his legal documents and records. *Turner*, 482 U.S. at 90, 107 S. Ct. at 2262. The absence of alternative means may suggest that a regulation is unreasonable, although this is not dispositive. *Beard*, 548 U.S. at 532, 126 S. Ct. 2572 (quoting *Overton*, 529 U.S. at 135, 123 S. Ct. at 2169). Under this factor, an alternative means of exercising a right "need not be ideal . . . they need only be available." *Overton*, 529 U.S. at 135, 123 S. Ct. at 2169. An alternative

---

[6] Plaintiff contends that Defendant does not strictly control CDs in Florida prisons. (Doc. 97 at 1-2). Plaintiff, however, does not provide any evidence to support this assertion. Thus, he has not demonstrated the existence of a genuine issue on this point.

means need not be a perfect substitute. *Livingston*, 683 F.3d at 218; *see Prison Legal News*, 890 F.3d at 972 ("[P]risons do not have to provide exact, one-for-one substitute to provide alternative means."). This factor must be viewed "sensibly and expansively." *Pope*, 101 F.3d at 1385 (citing *Abbott*, 490 U.S. at 417, 109 S. Ct. at 1884).

Here, the asserted right is the right to view legal documents to pursue ineffective assistance of counsel claims in court. There is no dispute that the challenged regulation permits inmates to access and possess legal materials in paper form, thereby allowing inmates to litigate appellate and post-conviction cases. Plaintiff, nevertheless, asserts that the regulation prohibits prisoners from accessing legal records that may exist only on a DVD or a CD, such as audio or video recordings. But even if the regulation precludes Plaintiff from accessing records found only on CDs and DVDs, the regulation clearly does not preclude inmates from viewing legal documents in general. Furthermore, Plaintiff has not demonstrated that he needs access to materials that could not be placed on paper—such as an audio or video recording—to litigate his ineffective assistance of counsel claims. Indeed, Plaintiff does not allege with specificity what is contained on the CD and how its specific contents are essential to his claims of ineffective assistance.

Additionally, the record indicates that inmates may gain access to materials found on a CD in other ways. Specifically, the letter from the Public Defender noted

that—if an inmate is not authorized to receive the CD—the Public Defender would send a CD "to a family member or friend who then can make you paper copies." (Doc. 7 at 12). Likewise, the letter from the state attorney indicates that "if there is an individual that is authorized to receive these items," Plaintiff could provide the state attorney's office with the name of such a person and the state attorney would have sent the materials to that person. (Doc. 87 at 46, 51). Such person could print legal documents and send them in paper form to Plaintiff. In fact, in his deposition, Plaintiff admitted that he authorized his attorney and two other individuals to receive the CD from the Public Defender. (Doc. 69-2 at pp. 27-28). Thus, at least in Plaintiff's case, there are reasonable alternatives to allowing inmates to receive and possess CDs and DVDs. Because there is at least one alternative means, this factor weighs in favor of the constitutionality of the regulation.

### 3.    *The Third Turner Factor: The Impact of Accommodation*

The third *Turner* factor requires a court to consider the impact that accommodation of a plaintiff's rights would "have on guards and other inmates and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90, 107 S. Ct. at 2262; *Pesci*, 935 F.3d at 1166; *Pope*, 101 F.3d at 1384. The Supreme Court noted that "in the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Turner*, 482 U.S at 90,

107 S. Ct. at 2262. Thus, "[w]here an accommodation of an asserted right would have a significant 'ripple effect' on fellow inmates or prison staff, courts should be particularly deferential to the informed decision of correctional officials." *Loor v. Bailey*, 708 F. App'x 992, 994 (11th Cir. 2017) (quoting *Pope*, 101 F.3d at 1385).

Here, Defendant contends that allowing Plaintiff to receive and possess a CD or DVD would significantly impact the prison guards' duties, other inmates' safety and health, and the allocation of prison resources. (Doc. 69 at 14-15). According to Defendant, allowing Plaintiff to possess an item that easily can be fashioned into a weapon—and which cannot be detected by metal detectors—poses a substantial danger of injury and death to inmates, visitors, and staff. (Docs. 69 at 15; 69-2 at 36-37; 69-3 at ¶ 4). Plaintiff did not dispute this with any relevant evidence. Indeed, in his deposition testimony, Plaintiff conceded that a CD or DVD may reasonably be used as a weapon and pose a security risk inside prison facilities. (Doc. 69-2 at 36-37).

Instead, Plaintiff again asserts that CDs and DVDs already are used for religious, recreational, and educational purposes. (Doc. 87 at 23, 64, 68-81, 91, 93). Defendant notes that this typically involves a large group of inmates viewing the contents of a single DVD, not multiple individual inmates viewing the contents of multiple DVDs. (Doc. 93-1 at 2 ¶ 3). More importantly, the inmates are never allowed to possess or access the CDs or DVDs. (Doc. 69-3 at ¶ 4; Doc. 69-5 at 2;

Doc. 93-1 at ¶ 6). Indeed, these CDs and DVDs are not even stored on the prison compound, because they pose a danger. (Doc. 69 at ¶ 4; Doc. 93-1 at ¶ 6).

As noted above, Defendant indicates that if the FDC were to permit inmates to receive CDs in legal mail and view them in prisons, the FDC necessarily would be required to reassign prison staff to individually supervise inmates who possessed CDs, and likely would be required to hire additional staff for this purpose. (Docs. 93 at 5; 93-1 at ¶ 6 (noting that when CDs are used, they are under "constant correctional supervision for security purposes")). Defendant asserts that this would create security concerns due to guard reassignments or would result in a substantial cost to the Defendant to hire and pay additional prison guards to supervise individual inmates as they used CDs. (*Id.*). Plaintiff has not put forth any evidence to the contrary, and therefore he has not created a genuine issue of material fact as to this factor. Thus, this third factor also weighs in favor of the constitutionality of the regulation.

### 4.   *The Fourth Turner Factor: "Exaggerated Response" Inquiry*

Finally, a court must consider whether the regulation is an exaggerated response to the security concern. In analyzing this factor, a court must consider whether there is an absence of ready alternatives. *Turner*, 482 U.S. at 90-91, 107 S. Ct. at 2262; *Prison Legal News*, 890 F.3d at 974. If so, this would be evidence of the reasonableness of the regulation. *Turner*, 482 U.S at 90-91, 107 S. Ct. at 2262. If,

however, an inmate can "point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.*; *see Onishea v. Hopper*, 171 F.3d 1289, 1301 (11th Cir. 1999) ("*Turner* compels a conclusion that a response is exaggerated only when the inmate produces evidence of 'easy alternatives' that come at a de minimis cost to valid penological interests."). This is not a "'least restrictive alternative' test." *Lawson*, 85 F.3d at 511 n.11 (quoting *Turner*, 482 U.S. at 91, 107 S. Ct. at 2262). That is, prison officials "do not have to set up and then shoot down every conceivable alternative method of accommodating the claimants' constitutional complaint." *Turner*, 482 U.S. at 90-91, 107 S. Ct. at 2262 (citations omitted).

Here, Plaintiff asserts that a *de minimis* alternative exists. Plaintiff again points to the fact that inmates already use CDs and DVDs within correctional institutions through religious and educational programs. (Doc. 87 at 23, 64, 68-81, 91, 93). He also points to prison regulations that permit legal materials to be stored— in locked cabinets—in the library. (Doc. 72 at 3; Doc. 87 at 22 (citing Fla. Admin. Code r. 33-501.301(7)(p)). Plaintiff contends that prison officials could store CDs in

prison libraries where prisoners then could view the contents in a controlled setting.[7] (Doc. 72 at 3).

As discussed above, however, the record indicates that inmates currently do not have direct access to CDs and DVDS. (Doc. 69-3 at ¶ 4, Doc. 93-1 at ¶ 6). Furthermore, Plaintiff's proposed alternative—permitting each and every inmate to have access to CDs and DVDs in the law libraries while under the supervision of prison guards—would entail substantial cost and would not satisfy the need for security. (Doc. 93-1 at ¶ 6). Plaintiff's suggested alternative does not eliminate the safety concerns relating to possession of CDs. The record indicates that this proposed alternative would place inmates located in the law library—as well as those in the entire prison—at risk.[8]

Plaintiff's proposed alternative also is not *de minimis* insofar as the only evidence on this point indicates that the FDC would be required to employ additional prison guards to supervise inmates while they were in possession of CDs and DVDs.

---

[7] Under Florida regulations, an inmate-law clerk "may retain their own or another inmate's personal legal papers in the law library" upon approval from the law library supervisor. Fla. Admin. Code. r. 33-501.301(7)(p)(1)-(2). These legal documents must be "secured in a locked file cabinet" when the law clerk is not present or using them. *Id.*

[8] The record reflects that the CDs and DVDs for educational and recreational purposes cannot be possessed or accessed by inmates. (Docs. 69-3 at 3; 93-1 at ¶ 6). Additionally, these CDs and DVDs are not stored on the prison compounds or areas where inmates would have access to them when they are not in use. *Id.*

That is, if all inmates were permitted to possess and access CDs and DVDs, to ensure that these CDs and DVDs were not converted to weapons, the FDC would have to hire more guards to monitor inmates while they possessed CDs and DVDs. *See generally* (Doc. 93-1 at ¶ 6 (stating that "correctional library supervision is limited to periodic security checks only. As a practical matter, the facility is unable to provide constant supervision for [an inmate] to specially view a CD or DVD at the facility."). As noted above, the unrebutted evidence shows that CDs and DVDs, when introduced into a prison, require "extra security" and "constant supervision." The exclusion of CDs or DVDs from legal mail, therefore, is not an exaggerated response to the problem of violence in prisons.

Plaintiff has not shown that there is a genuine issue regarding the constitutionality of the regulation that precludes Plaintiff from possessing or accessing a CD while in prison. Defendant, therefore, also is entitled to summary judgment for this reason.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant's motion for summary judgment, (Doc. 69), be

   **GRANTED.**

2.    Plaintiff's motion for summary judgment, (Doc. 72), be **DENIED.**

3.    The clerk of the court be directed to close the case file.

At Panama City Beach, Florida, this <u>21st</u> day of February, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-notice documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they may be heard in an objection to this report and recommendation.**